WEST INDIA OIL Co. (P.R.), Plaintiff and Appellee, v. JESÚS BENÍTEZ CASTAÑO, CITY MANAGER, ETC., ET AL., Defendants and Appellants.

No. 7312. Argued November 18, 1936.—Decided April 15, 1937.
Rehearing denied June 15, 1937.

*J. Valldejuli Rodríguez* for appellants. *James R. Beverley, R. Castro Fernández,* and *José López Baralt* for appellee.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the court.

By Ordinance No. 37, of January 7, 1932, the Board of Commissioners of the Capital imposed an excise tax of $150 annually on each pump installed and/or operated within the limits of the Capital for the sale of gasoline. By Ordinance No. 122, of February 6, 1933, it changed said excise tax to $40 annually on each pump installed and operated on a public street, sidewalk, or plaza, and to $20 annually on each pump installed on public or private land. By Ordinance No. 130, of April 3, 1933, it imposed the same excise tax as was levied on each pump by Ordinance No. 122, and repealed the latter. Finally, by Ordinance No. 144, of June 6, 1933, it levied an excise tax identical to that levied by said Ordinance No. 122.

The Treasurer of the Capital, with the approval of the City Manager, notified the plaintiff that it must pay a lump sum of $9,800 before December 21, 1935, for the excise taxes imposed by said ordinances, and threatened to attach its property in case said excise taxes were not paid before said date.

The plaintiff petitioned the District Court of San Juan to grant a permanent injunction, restraining the defendants from performing any act tending to collect said excise taxes and from attaching and selling at auction to collect the same, any property of said plaintiff.

In the complaint it was alleged that the defendants were attempting to collect "excises" (*patentes*) on pumps which never have been nor were then possessed, operated, or controlled by said plaintiff in its business of selling gasoline and oil, as they sought to collect said excise taxes on twenty-seven gasoline pumps and two oil pumps, when the plaintiff has only possessed and operated during the fiscal years from 1932 to 1935, twenty-two pumps during the year which ended on June 30, 1932; twenty-one pumps during the year which ended on June 30, 1933; fifteen pumps during the year which ended on June 30, 1934; and fourteen pumps during the year which ended on June 30, 1935.

In accordance with the prayer of the complaint, the District Court of San Juan issued a rule to show cause and directed the defendants to abstain from collecting the excise taxes in question pending a hearing on the rule. The defendants moved to dismiss the petition for injunction claiming in substance that plaintiff had an adequate and efficient remedy at law. Together with this motion the said defendants filed a demurrer on the ground that the complaint did not state facts sufficient to constitute a cause of action. These questions were submitted upon briefs, and the district court overruled the same and issued a preliminary injunction restraining the defendants from performing any act tending to collect said taxes and from attaching any property of plaintiff, until it were decided whether a permanent injunction should be issued.

The lower court granted the preliminary writ of injunction exclusively on the ground that, according to the allegations of the complaint, a tax or excise was sought to be collected from plaintiff, on pumps which the latter did not possess or had never possessed during the fiscal years stated in the complaint.

 In order to decide the question which served as a basis for the decision of the lower court, it is not necessary to apply Act No. 99 of 1931 (Sess. Laws, p. 626), as amended on May 4, 1933 (Sess. Laws, p. 254). Said act, by its section 32 a, authorizes an ordinary action to recover taxes paid under protest and provides that no other remedy will be allowed nor will any writ be issued to prevent or delay the collection of such taxes. It is sufficient to apply the general principles of law, without the necessity of invoking the provisions of said law, in order to reach the conclusion that plaintiff can not prevent the collection of the tax by means of a writ of injunction, upon the sole ground mentioned in the opinion of the court a quo to support its decision, for it has not paid or offered to pay the amount of the excise taxes on the number of pumps which it admits to possess.

Appellee is seeking to restrain the collection of certain excise taxes for the operation, within the jurisdiction of the Capital, of a certain number of pumps a part of which it possesses, and alleges that the defendants are trying to collect "patents" for pumps it has never possessed, operated, or controlled.

In the judgment of the lower court, the collection of such a tax from the plaintiff on pumps of which it does not have the possession is equivalent to depriving it of its property without due process of law, and the court adds that in such cases the injunction is a proper remedy, and that section 32 a of said Act No. 99 of 1931 is not an obstacle thereto.

There is no doubt that an equity court may issue writs of injunction to prevent the collection of taxes where the attendant circumstances are such as to justify judicial intervention. Courts, however, do not favor the exercise of judicial action unless it is necessary to protect substantial rights of the party invoking the equity jurisdiction. The writ of injunction must be issued in a clear case where the damage to the complaining party is really substantial. These are the general legal principles in the absence of express statutory prohibition. When this prohibition exists, the courts are bound to give it effect unless there are exceptional and extraordinary circumstances which determine and justify the equity jurisdiction.

Plaintiff admits that it owns and has installed within the Capital of Puerto Rico, for the retail sale of gasoline, a certain number of pumps, but claims that the defendants intend to levy and collect license (*patentes*) or excise taxes on a greater number of pumps than it in fact possesses, operates, or controls.

This is a case which, strictly speaking, can not be said to refer to an excessive assessment or valuation, but rather to the claim of an excise tax on property which does not belong to the taxpayer. In cases of excessive taxation, the courts maintain that in order that the taxpayer may invoke

the equity jurisdiction, he must pay or offer to pay the tax, reducing the excess of the same. Equity will not enjoin the collection of a tax, any portion of which is legal and valid, unless payment or offer of payment of said portion is made. This doctrine does not apply where the assessment is wholly and entirely void. 61 C. J. 1089; 16 L.R.A. (N.S.) 807, 811; L.R.A. 1916–A, 972, 979.

In the case of *Bismarck Water Supply Co.* v. *Barnes,* L.R.A. 1916–A, 965, 971, the Supreme Court of North Dakota said:

"The mere fact that the tax of the plaintiff may be larger than that of a majority of the taxpayers in the state does not give it any standing in a court of equity. As was said by the Supreme Court of the United States in 'State R. Tax Cases,' 92 U. S. 575, 614, 23 L. ed. 663, 674: 'It is a profitable thing for corporations or individuals whose taxes are very large to obtain a preliminary injunction as to all their taxes, contest the case through several years' litigation, and, when in the end it is found that but a small part of the tax should be permanently enjoined, submit to pay the balance. This is not equity. It is in direct violation of the first principles of equity jurisdiction.'

"At the time this action was commenced the defendant Barnes, as sheriff of Burleigh county, had already seized certain property belonging to the plaintiff. The plaintiff therefore had an adequate remedy at law by making payment of such taxes under protest, and bringing suit to recover the illegal excess. (Citations.)"

In the case of *Siegfried* v. *Raymond,* 60 N.E. 868, 869, decided by the Supreme Court of Illinois, it was declared that a court of equity must grant a remedy by injunction against the imposition of a tax on exempted property, and it was held that in case a tax, a part of which is exempted, is sought to be recovered, equity will prevent the collection of said part, if it be possible to distinguish the part of the tax which is exempted from that which is not. The court added that in case the legal and illegal portions are so mixed that they can not be distinguished, the injunction must be allowed for all the property.

The doctrine established by the courts can not be more just. Whether it is a case of an excessive taxation or of a tax levied on property which does not belong to the supposed taxpayer, if part of the tax is legally owed, the duty of the person affected by the collection of the tax is to pay or to offer the payment of the tax which he owes, so as to place himself in position to invoke the equity jurisdiction.

Plaintiff in its brief maintains that it can not be determined exactly what part of said excise taxes which the municipality is attempting to collect, refers to the pumps which it has in fact possessed and operated. It argues that the municipal collector seeks to collect a lump sum of $9,800 without there being any way to determine at this stage of the proceeding how the $9,800 of excise taxes should be distributed or apportioned among the gasoline pumps. We do not accept this contention. In the complaint it is clearly alleged that an excise tax of $40 per year is levied on the license for each pump wholly or partially occupying the public streets, sidewalks, or plazas, and $20 per year for each pump installed within public or private land.

Plaintiff knows where it has installed its pumps and is not unacquainted with the amount it must pay on those which, as it alleges, belong to it. It could very well have paid or offered to pay this portion of the excise tax and applied for an injunction as to the excise taxes on pumps which, as it claimed, it does not possess, operate, or control. Plaintiff itself admits that if the ordinances levying the excise taxes which it now attacks are valid, the tax would amount to $1,850. However, not even this amount has been paid or tendered, according to the allegations of the complaint.

Concerning the validity of the ordinances attacked, plaintiff in its brief states that it is not clear whether the tax imposed by said ordinances is a property tax or an excise tax. It claims that it pays the following imposts and taxes for the benefit of the Capital of Puerto Rico:

(*a*) Property taxes during the year 1936 amounting to 2.54 per cent of the value of the properties including, of course, the pumps for the sale of gasoline.

(*b*) An excise tax of $200 every three months for the license to sell gasoline at wholesale.

(*c*) An excise tax of from $5 to $15 quarterly for a license for the business of selling gasoline at retail on each of the service stations or establishments in which said pumps are installed, this tax amounting to $200 per year.

Plaintiff argues that if the taxes imposed are considered as property taxes, they are unconstitutional for several reasons, namely, because of lack of uniformity, because they levy a surcharge which exceeds 2 per cent of the value of the property located within the Capital, because they are confiscatory, and because they involve a double taxation.

In our judgment, although the ordinances establish as a basis for the computation of the taxes in question the payment of a fixed sum for each pump for the sale of gasoline or oil operated within the Capital, said taxes are collected for the license to operate said pumps and clearly constitute excise taxes on account of licenses.

The difference existing between an excise tax and a property tax has been clearly stated by the courts. The Supreme Court of the United States has suggested, for example, the following points as summarized in 26 R.C.L. 35, sec. 19, citing *Society for Savings* v. *Coite,* 6 Wall. (U.S.) 594, 18 L. ed. 897:

"An excise and a property tax, when the two approach each other, ordinarily may be distinguished by the respective methods adopted of laying them and fixing their amounts. If a tax is imposed directly by the legislature without assessment, and its sum is measured by the amount of business done or the extent to which the conferred privileges have been enjoyed or exercised by the taxpayer irrespective of the nature or value of the taxpayer's assets, it is regarded as an excise; but if the tax is computed upon a valuation

of property, and assessed by assessors either where it is situated or at the owner's domicil, although privileges may be included in the valuation, it is considered a property tax."

The Supreme Court of California has said:

"Generally speaking, the function of a property tax is to raise revenue. Such a tax does not impose any condition nor does it place any restriction upon the use of the property taxed. A privilege tax, although also passed to raise revenue, and as such is to be distinguished from the license tax or regulatory charge imposed under the state's police powers, is imposed upon the right to exercise a privilege, and its payment is invariably made a condition precedent to the exercise of the privilege involved." *Ingels* v. *Riley*, 53 P. (2d) 939, 942.

In *McKenney* v. *Alexandria*, 147 Va. 157, 136 S.E. 588, it was held that a municipal ordinance which provides that every person who sells gasoline by the use of a curb pump, whether situated in the public streets or in a private property, shall pay the sum of $25 for each discharge standard, does not levy a tax on said article but an excise tax on the privilege of conducting said business.

As the excise taxes imposed by the ordinances attacked are not property taxes, but excise taxes, the grounds adduced by the appellee to maintain that said ordinances are unconstitutional need not be considered.

Appellee further urges that, conceding that said taxes are excise taxes, the same are illegal and void, among other reasons, because the said gasoline pumps are a necessary element of the business of sale and distribution of gasoline and the taxes imposed by said ordinances constitute a double taxation, as the Insular Government has levied on plaintiff an excise tax of 7 cents on gallon of gasoline which it sells or imports (Act No. 40 of April 24, 1931, page 360); an excise tax for the privilege of conducting the business of selling gasoline at wholesale; and another excise tax for the privilege of selling gasoline at retail (Act No. 17, approved June 3, 1927, page 458). It also says that said excise

taxes are illegal and void because they deprive appellee of the equal protection of the laws and establish a discrimination against it, as it utilizes gasoline pumps in its business whereas persons and entities selling gasoline without the use of pumps are free from the tax; because the ordinances levying said excise taxes provide that the Treasurer of the Capital is the person to determine who will be the persons subject to the payment of the tax or excise, and such delegation of power to the said Treasurer is illegal and unconstitutional.

It is clear that the element on which the taxes in question are levied is not a necessary part of the business of selling gasoline generally, which can be sold by other means without the use of pumps. A tax will be sustained if the element on which the additional tax is levied is not a necessary or usual part of the general business. *Successors of Fantauzzi* v. *Municipal Assembly, etc.,* 295 Fed. 803; *Fajardo Devel. Co.* v. *Camacho et al.,* 35 P.R.R. 327.

The allegations contained in the complaint on this point do not justify the issuance of a preliminary writ of injunction. In order that this remedy may be granted there must be present not only all the elements and requisites of a case falling within the jurisdiction of the court, but according to the majority of the decisions there must not be any doubt in the mind of the court that the tax or method adopted to make it effective is clearly unconstitutional. Lewis & Spelling "The Law of Injunctions," 421.

The unconstitutionality of the law must be clear to justify judicial interference to restrain the collection of the tax.

The unconstitutionality of the ordinances does not clearly appear from the allegations of the complaint, and said ordinances are not exhibited therewith, nor are we in a position to say that this is a case of double taxation prohibited by law.

 Appellants contend that the lower court erred in overruling the motion to dismiss the petition for injunction, as section 32*a* of the Act of 1931 gives to the taxpayer a

legal, adequate, and efficient remedy, by paying under protest and bringing an ordinary action to recover the taxes so paid.

Plaintiff maintains that said statutory provision does not give an adequate remedy, because it does not provide for the payment of interest to the taxpayer on the amount paid under protest, in case the tax turns out to be illegal, and because it only gives to the taxpayer a preferred claim and not a clear and absolute right to reimbursement, for although it provides that the amount paid under protest must be reimbursed, it does not contain a mandatory provision compelling the Treasurer to make immediate reimbursement, and also because said procedure exposes the taxpayer to a multiplicity of suits.

We agree that said section 32 *a* does not provide for the payment of interest.

This court has decided that in an action to recover taxes paid under protest, the taxpayer can not recover interest unless it is expressly authorized. *Union Central Life Ins. Co.* v. *Gromer,* 20 P.R.R. 80. In accordance with the viewpoint adopted by this court, the taxpayer who pays taxes to the Government of the Capital under protest and who brings an action to recover said taxes, can not recover interest on the amount so paid, because there is no law to authorize it.

Now then, is the fact that neither said section 32 nor any other law provides for the payment of interest to the taxpayer on the amount paid under protest for taxes owed to the Government of the Capital, a sufficient ground for the issuance of a writ of injunction to restrain the collection of the tax herein?

It was not until the year 1926 that the procedure of payment under protest was attacked in the United States as inadequate unless it included the payment of interests. 42 Harvard Law Review 435. The question was first presented to this court in the case of *Texas Co. (P. R.), Inc.* v. *Board of*

*Commissioners,* 49 P.R.R. 911. In said case, the plaintiff, when attacking the constitutionality of one of the ordinances involved in the instant case (Ordinance No. 144 of June 6, 1933), in a certiorari proceeding brought before the District Court of San Juan, alleged as a ground for its petition that the procedure of payment under protest established by section 32*a* was not a legal and efficient remedy which would prevent the taxpayer from using the certiorari provided for by section 46 of said Act No. 99 of 1931. This court, speaking through Mr. Justice Travieso, made the following analysis of the Federal jurisprudence existing on the matter:

"The case of *Procter & Gamble Distributing Co.* v. *Sherman,* 2 F. (2d) 165, is cited by the appellant in support of its contention that the legal remedy granted by section 32 *a* is inadequate and that hence it is entitled to the writ of certiorari. In that case the plaintiff resorted to the United States District Court for the Southern District of New York, as a court of equity, praying an injunction, which is an equitable remedy, to restrain the authorities of that State from collecting certain taxes from the plaintiff corporation. The dismissal of the bill was sought by the defendant on the ground of insufficiency. The court held that the bill was sufficient and that the plaintiff was entitled to resort to equity jurisdiction, because in its opinion the statute of the State of New York involved in the case did not give the plaintiff an adequate remedy at law for the following reasons: (1) because the phrase 'may be refunded to such corporation' was ambiguous and left it uncertain whether the taxpayer could compel a refund, if the authorities opposed him; and (2) because the statute in question expressly refused to allow interest on the amount refunded.

"In *Southern California Telephone Co.* v. *Hopkins,* 13 F. (2d) 814, the plaintiffs also resorted to a court of equity praying an injunction to restrain the seizure and sale of telephone instruments in satisfaction of a local tax, which the plaintiff considered to be illegal as resulting in double taxation, which is forbidden by the laws of California. The defendants moved for dismissal of the bill upon the ground that the plaintiffs had an adequate remedy at law by paying the tax and suing to recover. The plaintiffs averred that the legal remedy afforded to them by the statute of California was not adequate because it would have bound them to bring a multiplicity of suits, and further because no interest could be recovered by the

plaintiffs on the sum that might be refunded to them. The District Court of California dismissed the bill. On appeal, the U. S. Circuit Court of Appeals for the Ninth Circuit, following the precedent established by the case of *Procter & Gamble, supra,* reversed the decree of the lower court and granted the injunction prayed for, on the ground that the legal remedy which the statute of California afforded to the plaintiffs was not adequate. Upon a further appeal to the United States Supreme Court, the latter affirmed the judgment and held that the remedy afforded by the statute was inadequate since it did not provide for the payment of interest on the amounts paid under protest for the time necessary to obtain judgments, and that the equity proceeding was permissible. See *Hopkins* v. *Southern Cal. Tel. Co.,* 275 U. S. 393, 399, 400.''

We transcribe below what the Supreme Court · of the United States said in the case of *Hopkins* v. *Southern Cal. Tel. Co.,* 275 U.S. 393, 399, which we cited:

''Petitioners maintain that under sections 3804 and 3819, California Political Code, respondents could have protected their rights by paying the assessed tax and bringing actions to recover. But whether either of these sections applies in circumstances like those here presented is far from certain. Section 3819 gives a remedy to the *owner;* and *Warren* v. *San Francisco,* 150 Cal. 167, intimates quite strongly that it applies only to actual owners. Whether the lessee who has paid taxes upon the owners' property can recover under section 3804 is also questionable. Counsel differ widely concerning the meaning of these sections and no opinion of the State court removes the doubt. In no permitted proceeding at law could interest upon payments be recovered for the time necessary to obtain judgments. The County and sixteen municipalities were interested in the taxes demanded and if petitioners had received payments, it would have been incumbent upon them to make prompt distribution. Considering all the circumstances, we find no clear, adequate remedy at law. The equity proceeding was permissible.''

We have copied the above paragraph because, as it may be seen, even though interest is mentioned therein, this was not the only reason which justified the equitable remedy, in the judgment of the Supreme Court.

Plaintiff cites the case of *Procter & Gamble Distributing Co.* v. *Sherman,* 2 F. (2d) 165, where the following is said:

"But, quite independently of such doubts, the relief is inadequate because of the express refusal to allow interest. It is no answer to say that interest is not allowed against the sovereign. (Citations.) The adequacy of the requisite legal remedy cannot be measured by the remedies one has against a person who is exempt from all process. If that were the test, the principal itself might be confiscated. While I have been referred to no decision on the point, it seems to me plain that it is not an adequate remedy, after taking away a man's money as a condition of allowing him to contest his tax, merely to hand it back, when, no matter how long after, he establishes that he ought never to have been required to pay at all. Whatever may have been our archaic notions about interest, in modern financial communities a dollar to-day is worth more than a dollar next year, and to ignore the interval as immaterial is to contradict well-settled beliefs about value. The present use of my money is itself a thing of value, and, if I get no compensation for its loss, my remedy does not altogether right my wrong."

This doctrine has also been upheld in the case of *Nutt* v. *Ellerbe,* 56 F. (2d) 1058, 1062.

The Supreme Court of Oklahoma, in *Atchison, T. & S. F. Ry. Co.* v. *Eldredge,* 166 P. 1085, maintained a different opinion. In said case there was alleged, among other things, the unconstitutionality of the remedy granted, because no provision was made for damages, attorney's fees, and use of the money. Said court held that these objections were without merit.

In the instant case, it is not necessary to definitely pass upon this question although the same appears to have been quite amply discussed by the courts which maintain that the remedy is inadequate and an injunction lies where no interest is allowed. We say that it is not necessary to definitely pass upon said question, because plaintiff has not placed itself within the principles of equity to request the writ of injunction. When it pays or offers to pay what it owes for the gasoline pumps in its possession according to the allegations of the complaint, then the question of whether or not it is in a position to request judicial intervention by an equitable proceeding can be discussed. He who seeks equity must do

equity. This is the rule applied by the courts in a case of this kind.

Plaintiff also urges that an ordinary action would not afford to it a speedy, effective, adequate, and safe remedy at law, because the financial condition of the Government of the Capital is so embarrased that it practically amounts to insolvency, said Government not being in a position to pay its current accounts when due, for which reason, plaintiff could not recover the excise taxes which said Government illegally seeks to collect, in case the same should later be declared void. Other specific averments were made in support of this general allegation, and it is claimed that these allegations have been admitted by the defendants, who confined themselves to filing a demurrer to the complaint on the ground that the same did not state sufficient facts to constitute a cause of action and to setting up the defense that the injunction did not lie because there was an ordinary remedy authorized by law.

Without stopping to pass upon the merits of the allega·tion of insolvency of the Government of the Capital, we do not think that a writ of preliminary injunction should be issued to restrain the collection of a tax, because the defendants should have confined themselves to filing a demurrer to the complaint. If the demurrer had been overruled, the defendants would have been entitled to file an answer to the complaint. To assert that they have admitted the insolvency of the municipality for the fact that they filed a demurrer, is too risky, when the jurisdiction of the court is invoked to grant an equitable remedy, the object of which is to enjoin the collection of certain excise taxes.

The Legislature of Puerto Rico has clearly manifested its intention that no remedy be allowed to enjoin the collection of taxes by the Government of the Capital.

This is a wise and reasonable precaution adopted for the security of the municipal government. As the Supreme

Court of the United States said in *Tennessee* v. *Smeed,* 96 U.S. 69, "no government could exist that permitted the collection of its revenues to be delayed by every litigious man or every embarrassed man, to whom delay was more important than the payment of costs."

In *Bismarck Water Supply Co.* v. *Barnes, supra,* the following was said:

"It is laid down as a broad principle that in no case will the collection of a tax be enjoined where it is not shown that the injury resulting from its enforcement would be irreparable, and this fact must appear in the bill by issuable averments. High, Inj. 362; *Ritter* v. *Patch,* 12 Cal. 298. If the tax is in itself a legal one, and the property on which it is levied subject to taxation, then it cannot be said that any such injury could result from its collection. It might financially embarrass the taxpayer, it might cast a cloud on his title, it might absolutely bankrupt him, but would these be any reasons for the interference of a court of equity? Assuredly not, or the powers and process of such court would find ample employment. . . . It is a matter of indifference to the public interests who pays the tax or out of what kind of property it is made. But it is of the highest importance that it be paid, and that speedily, and with as little cost and expense to the public treasury as possible. A party occupies no very equitable ground, to say the least, who admits that land which he owns is chargeable with a tax, that such tax is just and legal, but that he will make the error or neglect of an officer his excuse for delaying or defeating its payment. The last article of personal property subject to taxation belonging to the poor man may be seized and sold for the satisfaction of the tax, and courts of equity in most cases could afford no relief; while the rich man, with his broad acres, and money to fee attorneys, if permitted to take advantage of such quibbles and technicalities, might indefinitely postpone the discharge of his obligation, thereby throwing additional burdens on willing taxpayers, and embarrassing the public treasury."

After a careful study of the allegations of the complaint, we have reached the conclusion that the judgment appealed from must be reversed and the case remanded to the lower court for further proceedings in accordance with the terms of this opinion.

Mr. Chief Justice Del Toro took no part in the decision of this case.

ON MOTION FOR REHEARING

June 15, 1937.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the court.

In an extensive brief requesting a reconsideration of the judgment rendered by us in the present case, the petitioner contends that it does not feel bound to pay or to tender payment of the excise taxes levied upon the pumps which it admits to own, in order to place itself in a position to demand relief by injunction, as it challenges the validity of all the license or excise taxes imposed.

The petitioner admits to be the owner of a certain number of pumps installed by it within the limits of the Capital of Puerto Rico for selling gasoline.

By the petition for injunction filed, it is sought to restrain the defendants and appellants from collecting from the petitioner a lump sum amounting to $9,800 as excise taxes imposed upon the service stations installed by it on public or private land within the limits of the Capital. The main ground alleged for the issuance of the writ of injunction is that the defendants are attempting to levy and collect excise taxes upon a larger number of pumps than petitioner actually owns, works, or controls; that the remedy by payment under protest is inadequate; that the ordinances whereby such excise taxes are imposed are unconstitutional; and that the Government of the Capital is insolvent.

We reversed the order for a preliminary injunction issued by the lower court because, to our mind, it did not clearly appear from the allegations of the complaint that the ordinances challenged were illegal and void, and because, although it is true that it is sought to collect excise taxes on pumps which, according to the allegations of the petitioner, the latter does not own, collection is also sought of similar excise taxes on

installed pumps which the petitioner admits to own. In our opinion, whether the imposition of excessive taxes or the imposition of taxes on property not owned by the petitioner was involved, it was incumbent upon the petitioner to pay or to tender payment of the excise taxes corresponding to the pumps which it admitted to own, unless the nullity of the ordinances challenged were clearly shown. If such ordi- nances are valid, the court can not restrain the collection of excise taxes imposed on the pumps which the taxpayer admits belong to it.

We have said that in order to restrain by injunction the collection of a tax, where it is alleged that the legislation imposing the same or the procedure for its collection is un- constitutional, the taxpayer must clearly show such uncon- stitutionality.

This rule appears enunciated by Lewis & Spelling in their treatise ''The Law of Injunctions,'' as follows:

''To warrant injunctive relief against a tax, there must exist not only all the other elements and prerequisites of a case within the jurisdiction, but the case as presented must, in most of the juris- dictions, leave no doubt in the judicial mind that the tax, or the method adopted for its enforcement is unconstitutional, or illegal for other reasons. It is but another form of stating the rule, that courts of equity will not interfere except where the illegality of the tax is clear, to say that where serious doubts exist as to the proper con- struction of a statute, upon the construction of which the validity of a tax depends, injunction will be refused. But a temporary in- junction will sometimes be granted in such case conditionally, and in view of special circumstances, to restrain collection of the taxes until the validity of the tax can be determined.'' Lewis & Spelling, sec. 200, pp. 421, 422.

However, the appellant, disregarding the principles above laid down, asks: ''Why should the petitioner pay excise taxes on pumps owned by it, if precisely its claim is that the same are illegal and it lacks an adequate remedy at law within which to argue and establish their invalidity? How is it logical or equitable that this taxpayer should be compelled

to pay the excise taxes in question, when this court has not passed upon the proposition advanced by it, that the remedy of payment under protest is not adequate, especially if it be considered that this court seems deeply impressed by the authorities which hold that the remedy suggested is inadequate?''

And we ask, what has the existence or nonexistence of a law providing for an adequate remedy to do with the question decided? Granting that the law approved by the Legislature allowed the payment of interest, the petitioner would always be entitled to the issuance of a writ of injunction to restrain the collection of such excise taxes as were imposed on pumps not owned by it, notwithstanding the existence of the remedy provided by law. As regards the pumps belonging to it, the alleged invalidity of the ordinance must be clearly shown so that a decree may be issued staying the collection of the excise taxes, whether or not such remedy ever existed in our statute books. To hold otherwise would be to ignore the principles recognized by the jurisprudence, leaving the party against whom the injunction was sought at the mercy of any allegation that might be made by the petitioner. It is not sufficient to claim in the petition that a law or ordinance is invalid. It is also necessary that such invalidity be clearly shown in order to warrant a court of equity in issuing a writ of injunction to restrain the collection of a tax.

In every complaint it is necessary to allege a cause of action. In an injunction petition such cause of action should clearly appear, without leaving any room for doubt in the mind of the judge, where the unconstitutionality of an act is alleged and it is sought to restrain the collection of an excise or tax. No such clearness appears in the instant case. It is far from our minds to prejudge an issue not passed upon by the lower court. As stated in our opinion, the preliminary writ of injunction issued was based solely on the ground that it was sought to collect from the petitioner a tax imposed

upon a certain number of pumps not owned by it. We wish to say further that no special circumstances exist in the instant case to prevent the payment of the tax, and for this reason we think that we should confirm our previous decision revising the order appealed from.

The petitioner alleges that its cause of action entirely rests on the fact that "as the pumps are an indispensable part of its business, they can not be taxed, as its business has already been taxed both by the Insular and the Municipal Governments." It says that in its sworn petition it is alleged that "the aforesaid gasoline pumps are necessary elements in the business of selling and distributing gasoline," and that the defendants admitted such allegation on demurrer. That is, that because the defendants have demurred to the petition, we are expected necessarily to admit the conclusions of fact set up by the petitioner and to declare invalid the objected act. The conclusion of the petitioner is not binding upon us, especially since serious doubts arise from its own allegations as to the correctness of such assertion upon which so much stress has been laid by the appellee. The petitioner itself does not seem to agree with its assertion as to the pumps being an indispensable part of its business, since it alleges in its complaint that "by the imposition of such taxes the petitioner is deprived of the equal protection of the laws and is discriminated against owing to the fact that it uses pumps in its business, while those who sell gasoline without using pumps are exempt from paying such taxes." According to said allegations the pumps are an indispensable element for selling gasoline where the gasoline is sold by the petitioner; but the same are not so as regards other persons and entities who, according to the complaint, sell gasoline without the use of pumps.

We are also told by the petitioner that if a double taxation were finally held to exist, petitioner would be injured, because the municipality is insolvent and it could not recover the sum disbursed. Assuming the correctness of such a con-

clusion, we might also say that the Municipality of San Juan would be prevented from collecting the excise taxes in time, should the ordinance be decreed valid. This is why the petitioner is not entitled to stay the collection of a tax or excise, without clearly showing the unconstitutionality of the ordinance. The courts are unanimous in holding that the staying of the collection of a tax is a serious matter that must be carefully considered by the courts before decreeing the same, especially where, apart from any inadequacy of the remedy provided, it can not be controverted that the Legislature has expressly and definitely declared that the collection of a tax should not be restrained by injunction.

The motion for rehearing must be denied.